UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| NORMA GOLDBERGER, individually and on behalf of all others similarly situated,<br><br>　Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>　Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff Norma Goldberger ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through her attorneys. Plaintiff believes that additional, substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.　Meredith Corporation ("Meredith") knowingly used Plaintiff's and the other Class members' names on subscriber mailing lists that it sold on the open market to data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, and various other parties willing to pay for it. The lists Meredith publicly sold identified by name, address, and other personal attributes Plaintiff and every other Ohio subscriber to its magazine publications (including *Better Homes & Gardens* magazine, to which Plaintiff subscribed). Meredith's public use of Plaintiff's persona on the mailing lists that it sold and continues to sell (including in connection with the *Better Homes & Gardens* magazine subscription previously sold to Plaintiff) directly violated Ohio's Right of Publicity Law, Ohio Rev. Code § 2741, *et seq.* (the "ORPL").

2.　Documented evidence confirms these facts. For example, Meredith, either directly or through one or more intermediary acting on its behalf and at its direction, knowingly

advertises to the community at large, and knowingly sells to any member of the public interested in purchasing (and has in fact knowingly sold during the relevant time period), the mailing list titled, "Better Homes and Gardens Mailing List," which contains the full name, home address, and title of the publication subscribed to (collectively "Personal Reading Information") – as well as myriad other personal identifying attributes and demographic information, such as gender, age, and income—of each of the 3,601,481 active U.S. subscribers to *Better Homes & Gardens* magazine (including Plaintiff and each member of the Class), at a base price of "$115.00/M [per thousand]," (i.e., 11.5 cents apiece), as shown in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit A** hereto.

3. Meredith's practices of knowingly selling mailing lists on which each of its subscribers is identified is not limited to *Better Homes & Gardens* magazine. Meredith, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), also sells and offers to sell the mailing list titled, "Meredith Database – Masterfile Mailing List," which contains the Personal Reading Information of all 14,989,713 active U.S. subscribers to all of Meredith's various publications, among them Plaintiff and each member of the Class, at a base price of "$115.00/M [per thousand]," (i.e., 11.5 cents apiece), as shown in pertinent part in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit B** hereto.

4. Meredith sells these subscriber mailing lists, on which Plaintiff's and each Class

3

member's name appears (along with other Personal Reading Information and the title of the publication to which each member subscribed), without Plaintiff's or any other Class member's consent (written or otherwise).

5.  The ORPL clearly prohibits what Meredith has done. The ORPL provides, *inter alia*, that "a person shall not use any aspect of an individual's persona for a commercial purpose . . . during the individual's lifetime" unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code § 2741.02(A)-(B). The term, "persona," is defined as, "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* § 2741.01(A). The ORPL defines commercial purpose as, *inter alia*, "the use of or reference to an aspect of an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities[.]" *Id.* § 2741.01(B).

6.  Meredith has directly violated the ORPL by using Plaintiff's and Class members' names "on or in connection with" the mailing lists that Meredith sells on the open market – *i.e.*, "product[s], merchandise, [or] good[s]" – without any of these individuals' written consent.

7.  The ORPL was enacted to recognize each Ohio resident's right of publicity. Meredith has deprived Plaintiff and Class members of this right by surreptitiously selling mailing lists on which all Ohio-resident subscribers to its publications are identified by name, without notifying, much less obtaining written consent from, Plaintiff and Class members prior to engaging in these practices, let alone allowing Plaintiff and Class members to control or choose whether and how their identities are used in this way.

8.  Meredith's practices of monetizing its subscribers' names and identities for commercial purposes is not only unlawful, it is also dangerous, because it allows any member of the public willing to purchase this data to target particular subscribers, including vulnerable members of society, using their identity, interests and other demographic data. So, while Meredith profits handsomely from the use of its customers' identities in this way, it does so at the expense of its Ohio customers' statutory right of publicity.

9. Accordingly, Plaintiff brings this Class Action Complaint against Meredith for its nonconsensual and plainly unlawful use of its customers' personas in violation of the ORPL.

## PARTIES

10. Plaintiff Norma Goldberger is, and at all times relevant to this action has been, a natural person and a resident and citizen of the State of Ohio. During time period relevant to this action, Plaintiff subscribed to Meredith's *Better Homes & Gardens* magazine while residing in, a citizen of, and present in Ohio.

11. Defendant Meredith Corporation is an Iowa corporation with its headquarters and principal place of business in Des Moines, Iowa. Meredith is registered to do and does business throughout the entire United States. Meredith is the publisher of, among others, the magazines *Better Homes and Gardens, Living the Country Life, Entertainment Weekly, Food & Wine, Health, Midwest Living, People, Parents, Real Simple, Shape, Southern Living, Travel + Leisure, Wood, FamilyFun, Rachel Ray in Season*, and *InStyle*.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d), because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

13. The Court has personal jurisdiction over Meredith because Meredith maintains its corporate headquarters and principal place of business at 1716 Locust Street, Des Moines, Iowa 50309.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Meredith is subject to personal jurisdiction in this judicial District, because Meredith resides in this judicial District, and because a substantial part of the events giving rise to Plaintiff's claims took place within this judicial District.

## FACTUAL BACKGROUND

### *Ohio's Right of Publicity Law*

15.     The Ohio legislature enacted the ORPL to establish as a matter of law that each resident of Ohio has the right of publicity in his or her persona, including name.

16.     The ORPL prohibits companies, like Meredith, from, *inter alia*, publicly using a person's persona, such as their name, on or in connection with a product, good, merchandise, or service. *See* Ohio Rev. Code § 2741, *et seq*. Specifically, the ORPL provides, *inter alia*, that "a person shall not use any aspect of an individual's persona for a commercial purpose . . . during the individual's lifetime" unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code § 2741.02(A)-(B). The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* § 2741.01(A). And the ORPL defines commercial purpose as, *inter alia*, "the use of or reference to an aspect of an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities[.]" *Id.* § 2741.01(B).

17.     Despite the fact that scores of Ohio residents subscribe to Meredith's publications, Meredith disregarded its legal responsibilities to Plaintiff and other Class members by using these individuals' names "on or in connection with" the mailing lists that Meredith sells on the open market – i.e., "product[s], merchandise, [or] good[s]" – and doing so without their written consent, in direct violation of the ORPL.

### *Meredith Unlawfully Sells and Offers to Sell Mailing Lists Containing its Customers' Names, Addresses, and Other Personal Reading Information*

18.     Meredith maintains a vast digital database comprised of its customers' identifying information and other Personal Reading Information.

19.     Meredith, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), sold and continues to sell mailing lists containing its customers' names, addresses,

6

and other Personal Reading Information on the open market to data miners, aggregators, appenders, and cooperatives, aggressive marketing companies, other consumer-facing businesses, non-profit organizations seeking to raise awareness and solicit donations, and political organizations soliciting donations, votes, and volunteer efforts, among others willing to pay for it. The name and address (among other information) of each subscriber, including Plaintiff, appears on or in these lists, and identifies each such person as having subscribed to a particular magazine from Meredith.

20. Meredith does not seek (much less obtain) its customers' prior written consent to any of these practices and its customers remain unaware that their names and personas, as well as addresses, and other Personal Reading Information and sensitive demographic details (including information identifying the particular publication to which each customer subscribed), are on or in the mailing lists that Meredith sells on the open market to any member of the public interested in purchasing them.

21. Consumers can subscribe to Meredith publications through numerous media outlets, including the Internet, telephone, or traditional mail. Regardless of how the consumer subscribes, Meredith uniformly fails to obtain written consent from—or even provide effective notice to—its customers before using their persons on or in connection with the subscriber mailing lists that it sells.

22. As a result of Meredith's data compiling and sales practices, any member of the public can purchase mailing lists from Meredith. Meredith's practices of selling and offering to sell mailing lists that use its subscribers' personas (i.e., names) in this way puts consumers, especially the more vulnerable members of society, at risk of serious harm from scammers.

23. By and through these actions, Meredith has intentionally publicly used Plaintiff's and numerous other Ohioans' names and personas on or in connection with products, merchandise, or goods, without any of these individuals' prior written consent, in direct violation of the ORPL.

## CLASS ACTION ALLEGATIONS

24. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

25. Plaintiff brings this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of "all Ohio residents who, at any point in the relevant statutory period, had their names appear on or in connection with a subscriber mailing list advertised for sale or sold by Meredith without written consent" (the "Class").

26. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are millions of members in the Class. Class members may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

27. Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in complex class action litigation.

28. Common questions of law and fact exist as to all members of the Class and predominate over any question solely affecting individual members of the Class. Among questions of law and fact common to the members of the Class are:

    (a)    whether the subscriber mailing lists that Meredith sells to the public on the open market are "product[s], merchandise, [or] good[s]" within the meaning of the ORPL;

    (b)    whether Meredith used Plaintiff's and the Class's "names" or "personas" "on or in connection with" such subscriber mailing lists;

    (c)    whether Meredith obtained written consent before selling such subscriber mailing lists; and

    (d)    whether Meredith's practices of selling such subscriber mailing lists

violated the ORPL.

29.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Further, the expense and burden of individual litigation make it impossible for Class members to individually redress the wrongs done to them. In addition, individualized litigation would increase the delay and expense to all parties, multiplies the burden on the judicial system, and presents the potential for inconsistent or contradictory judgments. In contrast, the class actions device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. There will be no difficulty in the management of this action as a class action.

**CLAIM FOR RELIEF**
**Violation of the Ohio Right of Publicity Law § 2741, *et seq.***
**(By Plaintiff on Behalf of Herself and the Class)**

30.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

31.    Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

32.    Plaintiff is a natural living person and therefore an "individual" within the meaning of the ORPL. *See* Ohio Rev. Code § 2741.02.

33.    As a corporation in the business of publishing and selling magazine subscriptions, Meredith is a juristic "person" within the meaning of the ORPL. *See id.*

34.    Plaintiff, a Ohio resident, subscribes to *Better Homes & Gardens* magazine from Meredith. Each member of the Class likewise resides in Ohio and has subscribed to a Meredith publication.

35.    Prior to and at the time Plaintiff subscribed to *Better Homes & Gardens* magazine,

Meredith did not notify Plaintiff or the members of the Class that it would use their names or other identifying attributes "on or in connection with" the subscriber mailing lists that it sells. Plaintiff and Class members have never given Meredith authorization to do so.

36. After Plaintiff subscribed to *Better Homes & Gardens* magazine from Meredith, and during the relevant statutory period, Meredith, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly advertised the sale of and sold to various members of the general public mailing lists containing Plaintiff's Personal Reading Information (which identified her as an individual to whom Meredith had sold a *Better Homes & Gardens* magazine subscription), including to data aggregators, data appenders, data cooperatives, and various other persons interested in buying it to contact Meredith subscribers, without first obtaining Plaintiff's written consent or even giving her prior notice of its use of her name and identity in this way. Likewise, during the statutory period relevant to this action, Meredith knowingly advertised the sale of and sold to various members of the public mailing lists containing the names and addresses (among other Personal Reading Information) of all of the individuals who had subscribed to its various publications, including Plaintiff and each member of the Class.

37. The name "Norma Goldberger," one of the identifying attributes Meredith used on or in connection with the subscriber mailing lists that it sells, is the "the actual, assumed, or clearly identifiable name or reference to [her] that identifies [her]" as a person. Accordingly, Meredith used Plaintiff's "name" or "likeness," and thus her "persona," within the meaning of the ORPL. *See id.* § 2741.01(A), (C).

38. As alleged above throughout, Meredith knowingly used Plaintiff's and each Class member's names or likenesses (and thus their personas) on or in connection with its products, merchandise, goods, or services and thus for "commercial purposes" within the meaning of the ORPL. *See id.* § 2741.01(b)(1).

39. Significant commercial value exists in the aspects of Plaintiff's and Class members' names that Defendant uses on or in its products, goods, or merchandise.

40. Meredith did not request, much less obtain, any prior "written, electronic, digital, or any other verifiable means of authorization" from Plaintiff or any Class member prior to using the Class members' names or identities (i.e., personas) for commercial purposes within the meaning of the ORPL. *See id.* § 2741.01(F).

41. Accordingly, by using Plaintiff's and each Class member's "name," "an[] aspect of [each of their] persona[,] for a commercial purpose . . . during their lifetime[s]," and while they resided in Ohio, without "written consent," Meredith directly violated the ORPL. *See id.* §§ 2741.01(A), (C), 2741.02(A)-(B).

42. Plaintiff's injury was suffered in Ohio, where she resides. Each Class member's injury was likewise suffered in Ohio, where each such person resides.

43. Meredith knowingly and willfully used Plaintiff's and the other Class members' names and identities without their written consent in this way. Meredith, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), directed and oversaw both the advertising of the sale of the subject subscriber mailing lists on the open market as well as the actual sales of such subscriber lists to various third parties who purchased such lists during the time period relevant to this action. Meredith reaped significant monetary profits as a result of its sales of subscriber mailing lists on which and in which Plaintiff's and the other Class members' names and identities appeared.

44. Plaintiff and the members of the Class have been injured, while residing in Ohio, from the violations of their rights of publicity caused by Meredith's nonconsensual use of their names and identities (and thus their personas) in this way.

45. On behalf of herself and the Class, Plaintiff seeks: (1) statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to herself and each Class member pursuant to Ohio Rev. Code §§ 2741.07(A)(1)(a)-(b) & 2741.07(A)(2); (2) an award of punitive or exemplary damages pursuant to Ohio Rev. Code § 2741.07(A)(1)(c); (3) an injunction requiring Defendant to obtain prior written consent from Ohio customers prior to the use of their names or identities on

or in the subscriber mailing lists that Meredith advertises and sells pursuant to Ohio Rev. Code § 2741.07(D)(3); and (4) costs and reasonable attorneys' fees pursuant to Ohio Rev. Code § 2741.07(D).

## **PRAYER FOR RELIEF**

46. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

    A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

    B.    For an order declaring that Defendant's conduct as described herein violates the Ohio Right to Publicity Law, Ohio Rev. Code § 2741, *et seq.*;

    C.    For an order finding in favor of Plaintiff and the Class on the count asserted herein;

    D.    For an award of statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to herself and each Class member pursuant to Ohio Rev. Code §§ 2741.07(A)(1)(a)-(b) & 2741.07(A)(2);

    E.    For an award of punitive or exemplary damages pursuant to Ohio Rev. Code § 2741.07(A)(1)(c)

    F.    For an injunction requiring Defendant to obtain prior written consent from Ohio customers prior to the use of their names or identities on or in the subscriber mailing lists that Meredith advertises and sells pursuant to Ohio Rev. Code § 2741.07(D)(3);

    G.    For an order awarding Plaintiff and the Class their reasonable costs and reasonable attorneys' fees pursuant to Ohio Rev. Code § 2741.07(D); and

    H.    For prejudgment interest on all amounts awarded.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: November 22, 2021       Respectfully submitted,

/s/ Mollie Pawlosky
Mollie Pawlosky, AT0006198
DICKINSON, MACKAMAN,
TYLER & HAGEN, P.C.
699 Walnut Street, Suite 1600
Des Moines, IA 50309-3986
Telephone: (515) 244-2600
Facsimile: (515) 246-4550
mpawlosky@dickinsonlaw.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Thomas L. Laughlin, IV (*pro hac vice* forthcoming)
Joseph P. Guglielmo (*pro hac vice* forthcoming)
Erin Green Comite (*pro hac vice* forthcoming)
Sean T. Masson (*pro hac vice* forthcoming)
Carey Alexander (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
jguglielmo@scott-scott.com
ecomite@scott-scott.com
smasson@scott-scott.com
calexander@scott-scott.com

*Counsel for Plaintiff and the Putative Class*